

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
U.S. COMMODITY FUTURES TRADING : 16-cv-6551 (KBF)
COMMISSION, :
 :
 Plaintiff, : CONSENT ORDER OF
 : PERMANENT INJUNCTION
 -v- : CIVIL MONETARY PENALTY
 : AND OTHER EQUITABLE
FOREX CAPITAL MARKETS, LLC, : RELIEF
 :
 Defendant. :
------------------------------------------------------------X

## I. INTRODUCTION

On December 8, 2016, Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") filed its First Amended Complaint against Defendant Forex Capital Markets, LLC ("FXCM") seeking injunctive and other equitable relief, as well as the imposition of civil penalties, for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1-26 (2012), and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. § 1.1 *et seq.* (2014). (ECF No. 36)

## II. CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the First Amended Complaint against Defendant FXCM without a trial on the merits or any further judicial proceedings, FXCM:

1. Consents to the entry of this Consent Order for Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief Against Defendant FXCM ("Consent Order");

2. Affirms that FXCM has read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the

Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Consent Order;

3. Acknowledges service of the summons and First Amended Complaint;

4. Admits the jurisdiction of this Court over it and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012);

5. Admits the jurisdiction of the Commission over the conduct and transactions at issue in this action pursuant to the Act, 7 U.S.C. §§ 1-26 (2012);

6. Admits that venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012);

7. Waives:

(a) Any and all claims that it may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2012) and 28 U.S.C. § 2412 (2012), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. §§ 148.1 *et seq.* (2014), relating to, or arising from, this action;

(b) Any and all claims that it may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110 Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to, or arising from, this action;

(c) Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

(d) Any and all rights of appeal from this action;

8. Consents to the continued jurisdiction of this Court over it for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if FXCM now or in the future reside outside the jurisdiction of this Court;

9. Agrees that it will not oppose enforcement of this Consent Order on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and hereby waives any objection based thereon;

10. Agrees that neither it nor any of its agents or employees under its authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the First Amended Complaint or the Findings of Fact or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the First Amended Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect its: (a) testimonial obligations, or (b) right to take legal positions in other proceedings to which the Commission is not a party. FXCM shall undertake all steps necessary to ensure that all of its agents and/or employees under its authority or control understand and comply with this agreement;

11. By consenting to the entry of this Consent Order, neither admits nor denies the allegations of the First Amended Complaint or the Findings of Fact and Conclusions of Law in this Consent Order, except as to jurisdiction and venue, which it admits. Further, FXCM agrees and intends that the allegations contained in the First Amended Complaint and all of the Findings of Fact and Conclusions of Law contained in this Consent Order shall be taken as true and correct and be given preclusive effect, without further proof, in the course of: (a) any current or subsequent bankruptcy proceeding filed by, on behalf of, or against FXCM; (b) any proceeding

pursuant to Section 8a of the Act, 7 U.S.C. § 12a (2012), and/or Part 3 of the Regulations, 17 C.F.R. §§ 3.1 – 3.75 (2014); and/or (c) any proceeding to enforce the terms of this Consent Order. Defendant does not consent to the use of this Consent Order, or the Findings of Fact and Conclusions of Law in this Consent Order, as the sole basis for any other proceeding brought by the Commission.

12. Agrees to provide immediate notice to this Court and the Commission by certified mail, in the manner required by paragraph 43 of Part VI. of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against it, whether inside or outside the United States; and

13. Agrees that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against FXCM in any other proceeding.

### III. FINDINGS AND CONCLUSIONS

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction and equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), as set forth herein.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

**A.   Findings of Fact**

**The Parties To This Consent Order**

14. Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act,

7 U.S.C. §§ 1-26 (2012), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 – 190.10 (2014).

15. Defendant Forex Capital Markets, LLC is a registered RFED headquartered at 55 Water Street, 50th Floor, New York, NY. FXCM has offices, partners, and affiliates (collectively, "affiliates") in the major financial centers of the world, through which it obtains a global retail client base trading in forex.

**Undercapitalization**

16. Part 5 of the Commission's Regulations required FXCM to maintain adjusted net capital of $20,000,000 plus five percent of its total retail forex obligation in excess of $10,000,000, at all times. Regulation 5.7(a)(1)(i)(B), (a)(3), 17 C.F.R. § 5.7(a)(1)(i)(B), (a)(3) (2015). Pursuant to this standard, FXCM's capital requirement was approximately $25 million in January 2015.

17. In September 2011, the Swiss National Bank ("SNB") began a policy of fixing or "pegging" the Swiss Franc ("CHF") to a fixed exchange rate of 1.2000 Swiss Franc's per Euro ("EUR").

18. On January 15, 2015, at approximately 4:30 AM Eastern Standard Time, the Swiss National Bank unexpectedly announced its removal of the 1.2000 EUR/CHF peg. Within seconds of the announcement, the EUR/CHF rate dropped to 1.1659.

19. FXCM maintained exposure to the CHF/EUR currency pair based on FXCM's assumption that SNB would continue a fixed exchange rate of 1.2000 CHF per EUR. When the SNB unexpectedly removed the currency peg, FXCM knew or should have known that it would immediately suffer significant losses from its CHF/EUR exposure.

20. As a result of the removal of the 1.2000 EUR/CHF peg, FXCM became illegally undercapitalized on January 15, 2015.

21. FXCM did not complete its final calculation of the amount of its resulting capital deficiency until the evening of January 15, 2015.

22. Beginning on January 15, 2015, FXCM did not maintain its required minimum net capital. FXCM eventually determined and verbally informed the National Futures Association ("NFA") that it had a shortfall of at least $200 million under its capital requirements of approximately $25 million.

23. FXCM also reported to the NFA that in addition to its capital shortfall, its global affiliates also sustained significant capital shortfalls following the removal of the peg on the EUR/CHF rate by the SNB and volatility in the currency market.

24. FXCM and its affiliates had approximately 200,000 customers worldwide and 88,000 customers in the United States. The United States customers of FXCM were at risk of losing all of their funds if FXCM did not resolve its massive capital shortfall.

25. FXCM continued to be illegally undercapitalized on January 16, 2015.

26. On or about January 16, 2015, because of its undercapitalization, FXCM sought and obtained a loan of approximately $279 million from a third party.

**Notice of Capital Deficiency**

27. Although FXCM knew or should have known it was undercapitalized on January 15, 2015, FXCM did not provide immediate telephonic and facsimile notice to the CFTC of its capital deficiency.

28. Despite immediately identifying the significance of the event and immediately contacting its supervisors and managers, FXCM failed to immediately provide the CFTC with both telephonic and facsimile notice that the historic event would cause FXCM to have a capital deficiency about which FXCM knew or should have known.

29. It was only after the NFA and the CFTC initiated contact that FXCM provided notice of its capital deficiency.

30. FXCM's telephonic notice to the CFTC of its capital deficiency was made more than nine hours after FXCM should have known it was undercapitalized. FXCM did not provide its required facsimile notice to the CFTC of its capital deficiency until a week after FXCM knew it was undercapitalized.

**Zero Debit Policy**

31. In addition, on and before January 15, 2015, in contravention of Commission Regulations, FXCM represented to customers that it would limit customer losses. FXCM made these representations by advertising that if the customer incurred a negative balance through trading activity FXCM would credit the customer account with the amount of the negative balance. FXCM's policy of zeroing out negative customer balances was memorialized in FXCM's customer account opening documents.

**B.  Conclusions of Law**

   **Jurisdiction and Venue**

32. This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), which provides that whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the Commission may bring an action in the proper district court of the United States against such person to enjoin such act or practice, or to enforce compliance with the Act, or any rule, regulation or order thereunder.

33. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because FXCM resides in this jurisdiction and the acts and practices in violation of the Act occurred within this District.

**Undercapitalization**

34. By the conduct described in paragraphs 17 through 26 above, beginning on January 15, 2015, and continuing until January 16, 2015, FXCM did not maintain its required adjusted net capital, reporting a shortfall of at least $200 million. Therefore, FXCM violated Regulation 5.7(a)(1)(i) and (3), 17 C.F.R. § 5.7(a)(1)(i), (3) (2015).

**Failure to Notify the Commission**

35. Commission Regulation 5.6(a)(1), 17 C.F.R. § 5.6(a)(1) (2015), requires RFEDs to give the Commission telephonic notice, to be confirmed in writing by facsimile notice, when their adjusted net capital is lower than that required by Commission Regulation 5.7. The regulation further requires that "[t]he notice must be given immediately after the applicant or registrant knows or should know that its adjusted net capital is less than that required by any of the aforesaid rules to which the applicant or registrant is subject...." 17 C.F.R. § 5.6(a)(1) (2015).

36. By the conduct described in paragraphs 27 through 30 above, FXCM failed to immediately notify the Commission when it knew or should have known that its adjusted net capital was lower than that required by Commission Regulation 5.7, and that it was therefore undercapitalized. This failure violated Commission Regulation 5.6(a)(1), 17 C.F.R. § 5.6(a)(1) (2015).

**Limiting Customer Losses**

37. On and before January 2015, FXCM had a stated policy of crediting customer accounts the amount of their negative balances when the debt was incurred due to trading activity. As such, FXCM's policy limited customer losses.

38. By the conduct described in paragraph 31, FXCM violated Commission Regulation 5.16, which prohibits it from representing that it would guarantee customers against loss, limit the loss of customers, or not call for or attempt to collect security deposits, margin, or other deposits of customers.

## IV.  PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

39. Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), FXCM is permanently restrained, enjoined and prohibited from directly or indirectly violating Commission Regulations 5.6(a)(1), 5.7(a)(1)(i), (3), and 5.16, 17 C.F.R. §§ 5.6(a)(1), 5.7(a)(1)(i), (3), and 5.16 (2015).

## V.  CIVIL MONETARY PENALTY

40. FXCM shall pay a civil monetary penalty in the amount of Six Hundred Fifty Thousand Dollars ($650,000.00) ("CMP Obligation") within ten (10) days of the date of the entry of this Consent Order. If the CMP Obligation is not paid in full within ten (10) days of the date of entry of this Consent Order, then post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Consent Order and shall be determined by using

the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961 (2012).

41. FXCM shall pay its CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> ATTN: Accounts Receivables
> DOT/FAA/MMAC/AMZ-341
> CFTC/CPSC/SEC
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169
> (405) 954-7262 office
> (405) 954-1620 fax
> nikki.gibson@faa.gov

If payment by electronic funds transfer is chosen, FXCM shall contact Nikki Gibson or her successor at the address above to receive payment instructions and shall fully comply with those instructions. FXCM shall accompany payment of the CMP Obligation with a cover letter that identifies FXCM and the name and docket number of this proceeding. FXCM shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

### A.   Provisions Related to Monetary Sanctions

42. Partial Satisfaction: Acceptance by the Commission or the Monitor of any partial payment of FXCM's Restitution Obligation, Disgorgement Obligation, or CMP Obligation shall not be deemed a waiver of its obligation to make further payments pursuant to

this Consent Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

## VI. MISCELLANEOUS PROVISIONS

43. **Notice:** All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to the Commission:

> Director, Division of Enforcement
> U.S. Commodity Futures Trading Commission
> 1155 21st Street, N.W.
> Washington, D.C. 20581

Notice to Defendant FXCM:

> Israel Dahan
> William Johnson
> King & Spalding, LLP
> 1185 Avenue of the Americas
> New York, NY 10036

All such notices to the Commission shall reference the name and docket number of this action.

44. **Change of Address/Phone:** Until such time as FXCM satisfies in full its CMP Obligation as set forth in this Consent Order, FXCM shall provide written notice to the Commission by certified mail of any change to his telephone number and mailing address within ten (10) calendar days of the change.

45. **Entire Agreement and Amendments:** This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date. Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless: (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

46.     Invalidation: If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

47.     Waiver: The failure of any party to this Consent Order at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party at a later time to enforce the same or any other provision of this Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

48.     Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this action to ensure compliance with this Consent Order and for all other purposes related to this action, including any motion by FXCM to modify or for relief from the terms of this Consent Order.

49.     Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Consent Order shall be binding upon FXCM upon any person under its authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with FXCM.

50.     Authority: Ornit Niv hereby warrants that she is the Chief Executive Officer of Forex Capital Markets, LLC, and that this Consent Order has been duly authorized by FXCM and she has been duly empowered to sign and submit this Consent Order on behalf of FXCM.

51. Counterparts and Facsimile Execution: This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

52. Contempt: FXCM understands that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings it may not challenge the validity of this Consent Order.

53. Agreements and Undertakings: FXCM shall comply with all of the undertakings and agreements set forth in this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this Consent Order for Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief Against Defendant FXCM forthwith and without further notice.

IT IS SO ORDERED on this 13th day of February, 2017.

_____
UNITED STATES DISTRICT JUDGE
FORREST

JS


CONSENTED TO AND APPROVED BY:

*[signature]*

**Ornit Niv, Chief Executive Officer**

Date: February 8, 2017

Approved as to form:

*[signature]*

Israel Dahan
William Johnson
King & Spalding, LLP
1185 Avenue of the Americas
New York, New York 10036

ATTORNEYS FOR PLAINTIFF
U.S. COMMODITY FUTURES TRADING
COMMISSION

*[signature]*

Saadeh Al-Jurf (pro hac vice)
Luke B. Marsh (pro hac vice)
Division of Enforcement
U.S. COMMODITY FUTURES TRADING
COMMISSION
1155 21st Street N.W.
Washington, D.C. 20581
(202) 418-5000 (telephone)
(202) 418-5523 (facsimile)

Dated 2/10/17

